## Morgan v. Morgan

*Gretchen Sohn Reed,* for plaintiff.
*Frank S. Kelker,* for defendant.

KUNSELMAN, *J.,* July 22, 1982 — In this divorce action, the court is asked to determine the issues of equitable distribution, alimony and counsel fees, in addition to passing upon the parties' right to a divorce under Section 201(c) of the Divorce Code. From the hostilities exhibited by both parties toward each other during various proceedings before the court, it is obvious that the marriage is irretrievably broken. Unfortunately, the cause of the breakdown — plaintiff's inability to manage the parties' income — could have easily been avoided had the parties conducted themselves as responsible adults. Their failure to do so has caused whatever love they might have had for each other to be replaced by hatred and estrangement. The result is their inability to communicate responsibly with each other, let alone amicably resolve the issues.

The parties were married on July 8, 1972. Three children were born of their union, ages 10, 7, and 5.

The marriage occurred shortly after the plaintiff graduated from high school. She was 18 years of age at the time. In the years that followed, she did not work but performed the duties of a wife, mother and homemaker. Defendant was employed as a journeyman electrician and worked out of Local 712 of the International Brotherhood of Electrical Workers. His net income for 1980, the year prior to the separation was $64,470.20. As hereinabove mentioned, it was the disposition of this large amount of money which caused the marital breakdown and which resulted in an attitude on the part of both parties which caused them to do anything and everything they could to make life miserable for the other.

The parties handled this income in a manner which was not unusual for married couples — defendant cashed his check each week, retained enough money for his own use, $100 to $150 each week, then gave the rest of the money to plaintiff to operate the family budget. In this case, however, the result was unusual since, not only were some of the bills not paid, but the excess was dissipated. The court can understand defendant's having been upset but cannot understand, nor does it condone his reaction thereto.

He knew that plaintiff had difficulty managing money since she had experienced problems in prior years. However, instead of assuming control of the income and responsibility for disbursing the same, he consciously and deliberately took what he could of the marital assets, hid others and then left the marital home in October 1981. Since that time, he has quit his job and has done everything possible to avoid his obligations to his family.

Before the separation, the parties lived on a farm in Greene Township. In preparation for the separa-

tion, defendant withdrew $16,420.72 from a deferred savings plan, sold some farm equipment and farm animals — retaining the proceeds thereof, gave most of the farm equipment and some animals to relatives and took up with another woman. He used most of the money from the deferred savings to buy a parcel of land in Columbiana County, Ohio and a mobile home. Some of the money was used to pay bills. He states his residence to be the address of the Ohio property, but he actually lives with his girlfriend in Beaver Falls.

Plaintiff initiated a complaint against defendant for support for herself and the three children. A hearing was held before Judge Walko of this court who entered an order of $900 per month for support. Immediately thereafter, defendant took a truck, which was plaintiff's sole means of transportation for herself and the children, and sold it for the amount due the encumbrance holder. Judge Walko, thereafter, increased the support order to $1,000 per month. The initial order was made in February 1982 and the revised order on May 27, 1982. Payments on the orders were made as follows: March 29, $810; April 30, $900; June 3, $700; June 30, $300; July 28, $190; August 31, $95.60; October 6, $474; November 5, $284; December 30, $100; and January 31, 1983, $100. He has paid no support since January 31, 1983 and is in arrears as of March 31, 1983 in the amount of $9,246.40. In addition, he has refused to sign papers necessary to process the payment of medical bills by his insurance carrier which were incurred for his wife and children. Fortunately for the children, their maternal grandparents have been assisting plaintiff financially, have purchased food and purchased a mobile home so they would have a place to live.

Plaintiff's conduct has not been much better. She

testified that she spent all the money because, if he could spend $500 to $700 each month on himself openly, she could do the same thing behind his back. As a result, the mortgage and real estate taxes on the farm became delinquent, utilities became delinquent, and installment loans became delinquent. In addition, she withheld visitation with the children to punish defendant for not paying support. For this, the court, on defendant's petition, adjudged her to be in contempt. Of course, the children were her only weapon which, until then, she used effectively as retribution against defendant.

The delinquent mortgage and taxes precipitated first a threatened tax sale and then a mortgage foreclosure action. Plaintiff's parents advanced her a sufficient amount of money to forestall the tax sale. Plaintiff found a buyer for the farm in order to save the equity and forestall the foreclosure action. However, defendant, at a pre-trial conference, indicated an unwillingness to cooperate in the sale of the farm and expressed a willingness to permit the foreclosure to proceed so that plaintiff would lose her share of the equity. As a result, this court was required to order him to execute the agreement of sale and later to execute and deliver a deed. The farm was eventually sold, producing a net amount of $11,654.49. This sum, pursuant to order of court, was deposited by the prothonotary in an interest bearing account for the benefit of the parties and is to be distributed equitably by the court.

Insofar as the Ohio property and defendant's mobile home are concerned, defendant still owns the real estate although he transferred legal title thereto to his girlfriend. The court reaches this conclusion because defendant testified that he had transferred the title to both the real estate and the mobile home to her without consideration. However, the mobile

home was damaged by fire after which he sold it receiving $2,000. With that money, he "went out and had one good time". It is apparent from this testimony and from all the foregoing circumstances, that defendant transferred title to the real estate in an effort to secure an advantage with respect to equitable distribution. To that extent, the transfer amounts to a fraud upon plaintiff's rights. However, since title to the land is not in defendant and since the property is not within our jurisdiction, our order will not affect the land. We will merely consider that fact in our disposition of the other issues in this case.

## EQUITABLE DISTRIBUTION

In addition to the proceeds from the sale of the farm and the funds the defendant withdrew from the deferred savings plan, the parties owned numerous items of household goods and other personal property which were in their marital residence and various items of farm equipment and farm animals. They had no other property. All of these items of personalty are set forth in two lists which were introduced as Plaintiff's Exhibits 5 and 8. Exhibit 5 is a typed list containing 48 entries which was prepared by the defendant's former counsel, has values assigned by the defendant and contains the heading "Household Items and Other Personal Property Which Leah Morgan Has or Had When James Morgan Left Common Residence".

The list is somewhat exhaustive since it includes large items, such as a bedroom suite, all the way down to small items, such as miscellaneous small hand tools, dishes, pots and pans and silverware. The total value of the items, according to defendant, is $11,947. The court concludes that defendant's evaluation is grossly exaggerated — most of the val-

ues are at least double plaintiff's value and in one case, a man's gold ring, is almost five times its 1973 purchase price.

Defendant's position is that, since all the items were in the home when he left and are not there now, plaintiff must have taken them. While she admits to having taken some items, she denies taking all items and in fact, asserts that defendant has some. Since defendant had equal access to the home and since his conduct has shown an intent to defeat plaintiff's marital rights, we accept her testimony as true both with respect to the property which she took and the value thereof.

Our review of the testimony and evidence leads us to conclude that plaintiff and defendant have already received the contents of the house, with the exception of the following items which were left at the farm and of which there was no evidence as to who received them: man's gold ring, clothes cabinet, refrigerator, washer and dryer, foot stool, four pieces of lawn furniture, 1974 Chevrolet Nova, and half horsepower motor. As to these items, the court can only conclude that the parties abandoned the same. As to the remaining items, the court concludes that the values which each party received were approximately equal and therefore will confirm the distribution thereof.

Insofar as the farm equipment and farm animals are concerned, the court finds that defendant took or otherwise disposed of every item. He testified that he gave his father the farm equipment to satisfy an indebtedness to him. Even if this is true, which we doubt, it would not affect plaintiff's right to receive her share since it was not her debt. In addition, there were four horses, two head of cattle and a number of items of horse equipment. We find the total value of all such items to be $9,267.

Thus, we must consider the distribution of the net proceeds from the sale of the farm, in the amount of $11,654.49, the amount of deferred savings received by defendant of $16,420.72 and the value of the farm equipment and farm animals. In making this distribution, we are required to consider the factors set forth in Section 401 (d) of the Divorce Code. In this connection, it is noted that the parties have been married for 11 years. Plaintiff is 28 years of age and her vocational skills are somewhat limited. While she had completed a course of training as a nurse's aide, she has no experience and therefore has been unable to secure employment. On the other hand, defendant has the potential to earn large sums of money as a journeyman electrician. Therefore, his potential for securing future capital assets is much greater. While plaintiff contributed to marital property as a homemaker, she also caused a negative affect in the acquisition of marital property by wasting a large portion of the defendant's income. The economic circumstance of both parties is not presently good, principally because defendant has refused to make himself available for work through Local 712.

Considering all the foregoing, we conclude that the total value of the sales proceeds of the real estate, the deferred savings and the farm equipment and animals should be divided equally. The total value is $37,342.21. One-half thereof, or $18,671.11 will be awarded to plaintiff by awarding her the entire amount of the money held by the prothonotary and by directing defendant to pay her the difference of $7,016.62.

## ALIMONY

Plaintiff has requested alimony in the amount of $300 per month for a period of three years. Defend-

ant, of course, denies that she is entitled to receive anything. Under Section 501 (a) of the Divorce Code, plaintiff must lack sufficient property to provide for her reasonable needs and be unable to support herself through appropriate employment.

We conclude, that, while the amount awarded to plaintiff may be sufficient to provide for her reasonable needs, she will not be able to support herself through appropriate employment unless she receives the entire amount thereof. She does have training to secure employment as a nurse's aide but must be able to travel to and from work and so, will need to purchase a motor vehicle for that purpose. The court concludes that she will not have sufficient funds to do this until she receives the sum of $7,016.62 from defendant. For this reason, we conclude that she is not a proper candidate for alimony, so long as she has transportation to and from work. We will, therefore, deny her request for alimony but will direct defendant to pay plaintiff the sum of $7,016.62 in monthly installments in the amount of $300 each month.

## COUNSEL FEES

Section 502 of the Divorce Code authorizes the Court to allow reasonable counsel fees in proper cases. In determining whether or not this case is a "proper case", we look to the rule in Hoover v. Hoover, 288 Pa. Super. 159, 431 A.2d 337 (1981). There, the court said on pp. 161 and 162, that:

"Actual need must be shown in order to justify an award of counsel fees so that both parties are placed 'on a par' in defending their rights."

We believe that plaintiff here has shown need. She has been unable to work for the reasons previously stated. Her sole source of income is the sup-

port which defendant was ordered to pay. However, he has failed or refused to pay anything since January 1983. As a result, plaintiff has had to rely upon food stamps and the financial assistance of her parents. She has no savings and the marital assets awarded to her hereinabove will be needed to provide for reasonable needs of herself and the parties' children.

In addition, we have held that the plaintiff must also prove the ability to pay and the value of the legal services. See Holben v. Holben, 41 Beaver C. L. J. 200. Here, while defendant has no *present* ability to pay because he is not working, we have already concluded that he is not working in order to deliberately avoid the financial obligations to his family. Therefore, the court concludes that he has the ability to pay. Plantiff also proved the value of the legal services. She introduced Exhibit 15 which is a two and one-half page statement setting forth, in detail, the date, description of each service and the amount of time which was involved in performing each service. The statement included the period between January 15, 1982 and March 17, 1983, the day before the first hearing. The services included a hearing before the Domestic Relations Hearing Officer, two support hearings before Judge Walko, a visitation hearing before our Child Custody Conference Officer, two contempt hearings before this writer, a pre-trial conference, hearings to require defendant to execute and deliver documents to sell the farm and avoid foreclosure, and numerous conferences; preparation of pleadings and correspondence. The total time involved was 38 and three-quarter hours at an hourly rate of $75.

In addition, as counsel mentions in her brief, she expended eight hours for trial of the case and four hours preparing the brief. Thus, she expended a to-

tal of 50.75 hours. The court recognizes that some of the time was expended in connection with delinquent taxes and the sale of the real estate which was not directly related to this case. However, it was expended for the purpose of preserving marital assets and therefore, will not be excluded. Defendant argues that the time expended in connection with plaintiff's contempt (3 hours) should be excluded. We agree.

Thus, the court finds that 47.75 hours were expended by counsel for plaintiff to perform the various services. We conclude that the time expended, the services performed and the hourly rate are all reasonable and therefore will award counsel fees in the amount of $3,581.25.

## MEDICAL BILLS

As hereinabove indicated, defendant has refused to sign authorization for payment of various bills related to medical treatment of plaintiff and the children. Plantiff testified that the insurance official at the office of Local 712, I.B.E.W. would process such payment requests without the signature of defendant if a court order were entered authorizing it to be done. Defendant has indicated in his brief that he has no objection to such an order, so long as such non-objection is not construed as an admission that such services were reasonably and necessarily incurred, so as to impose a personal obligation on his part to pay the same.

In view of this, we see no reason why such an order should not be entered, even though we are not certain of its effect.

## REQUIRING THE DEFENDANT TO WORK

Plaintiff has requested us to order defendant to work in Pennsylvania. As heretofore indicated, de-

fendant deliberately took what marital assets he could, left the home and quit his job which had been secured through Local 712, I.B.E.W. Although he had worked steadily for some time prior thereto, he has not worked since. He claims that he now lives in Ohio. The court has found otherwise. He testified that he can go to any I.B.E.W. Local in the country and ask for work but he has not done so at Local 712 because he does not want to work in Pennsylvania at this time. As a result, he is in excess of $9,000 in arrears on the support order and, without the financial assistance of the maternal grandparents, his children would be dependent upon public welfare.

Section 401 (b) of the Divorce Code provides, in part, that:

"In the enforcement of the rights of any party to any such matters (property rights, custody and visitation, child support, alimony and any other related matters), the Court shall have all necessary powers, including but not limited to, the power of contempt and the power to attach wages."

Further, in Section 401 (c) the legislature has provided that:

"In all matrimonial causes, the Court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this act, and may grant such other relief or remedy as equity and justice require against either party . . . ".

We believe that the foregoing provisions of the Divorce Code give us the authority to make some provision which will protect the interests of plaintiff and the children with respect to the receipt of support and which will protect the interest of plaintiff with respect to the receipt of her share of marital

property. The court abhors defendant's conduct in deliberately avoiding his family obligations, particulary as to the children. And while we do not believe we can or should go so far as to impose an involuntary servitude upon defendant, we do believe that if defendant is able to work and is willing to work in Ohio or West Virginia or any other state except Pennsylvania, then he should accept available employment in Pennsylvania as well.

Such an Order would not violate the rule that specific performance will not lie to enforce a contract for personal services set forth in McMenamin v. Philadelphia Transportation Company, 356 Pa. 88 51 A.2d 702 (1947). There is no contract for personal services here. Moreover, an appropriate order would mitigate the harm to plaintiff and the children caused by the dissolution of the marriage and would effectuate economic justice and insure a fair and just determination of property rights. We are required to consider these legislative objectives in construing the provisions of the Divorce Code. Therefore, an appropriate order will be entered.

## DECREE

And now, July 22, 1983, for the reasons set forth in the foregoing opinion, the following decree is entered;

1. A final decree shall be entered divorcing the parties from the bonds of matrimony, unless exceptions are filed within ten days of notice of filing.

2. Plaintiff, Leah Morgan, is awarded the entire balance, including interest accrued thereon, of the funds on deposit with the Prothonotary of Beaver County.

3. Defendant, James L. Morgan, is ordered to pay plaintiff, Leah Morgan, the sum of $7,016.62, repre-

senting the balance of her share of the marital assets. It is further ordered that this sum may be paid in monthly installments of not less than $300 each month, the first installment to be paid on or before 30 days from the date this decree becomes final and each subsequent installment to be paid on or before the same day of each month, thereafter, until the amount of $7,016.62 has been paid in full.

4. The property which was in the marital home and which is now in the possession or control of each party is awarded to the party in possession or control, thereof.

5. Plaintiff's claim for alimony is denied.

6. Plaintiff is awarded counsel fees in the amount of $3,581.25. Defendant is directed to pay that sum to Gretchen S. Reed, counsel for plaintiff.

7. Local 712 of the International Brotherhood of Electric Workers, or its Welfare Fund, is authorized to process all applications for payment of medical, hospital, dental, prescriptions and eye care services performed prior to the date hereof for Leah Morgan, James L. Morgan, Jr., Christina Lea Morgan and Ben Scott Morgan, and all applications for the payment of such services for James L. Morgan, Jr., Christina Lea Morgan and Ben Scott Morgan, following the date hereof, without the signature or authorization of defendant, James L. Morgan.

8. Defendant is directed to notify Local 712 of the International Brotherhood of Electrical Workers that he is available for assignment to employers for work within its jurisdiction and, if physically able, to accept employment that is available to him.

9. The court shall retain jurisdiction of this case for the purpose of conducting any proceedings that may become necessary in connection with carrying out the provisions of this decree or its enforcement.